UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ANTHONY MORRIS,<br><br>                    Plaintiff,<br><br>          vs.<br><br>DR. CLAUD MITCHELL; DR. DOUGLAS<br>C. PETERSON; DR. M. PENNER; DR.<br>VONG; JANE DOE, sued in their individual<br>capacities; and CHERYL PLILER; LINDA<br>L. RIANDA; and  RICK MANUEL, sued in<br>their individual and official capacities,<br><br>                    Defendants. | Case No. 2:02-cv-02489-JKS<br><br><br>ORDER FROM CHAMBERS<br>[Re: Motions at Dockets<br>61, 67, 70, and 74] |

## I.  MOTIONS PRESENTED

At docket 61 plaintiff James Anthony Morris ("Morris"), appearing *pro se*, has filed a motion denominated "Dispositive Motion Pursuant to Fed. R. Civ. P. 72(a)," to which defendants filed their opposition at docket 73.[1]  At docket 67 defendant Dr. M. Penner ("Penner") has filed a motion for summary judgment; at docket 70 defendant Rick Manuel ("Manuel") has filed a motion for summary judgment; and at docket 74 defendant Linda L. Rianda ("Rianda") has also filed a motion for summary judgment.  At docket 80 Morris has filed an opposition to the three motions for summary judgment filed by the defendants.  No party has filed a reply to an opposition and the time for filing a reply has lapsed; the motions have been fully briefed.  No party has requested oral argument and the court has determined that oral argument would not be of assistance in deciding the motions.

---

[1] FED. R. CIV. P. 72(a) is the procedure for processing non-dispositive motions by magistrate judges.  As did defendants in their opposition, the court will treat the motion as a motion for summary judgment under FED. R. CIV. P 56.

## II.  BACKGROUND/FACTS

This action is a civil rights action filed under 42 U.S.C. § 1983.  Morris alleges that defendants acted with deliberate indifference in failing to provide him with proper medical care in violation of the Eighth Amendment to the U.S. Constitution.[2]

On May 8, 2000, Morris was first treated by defendant Dr. M. Penner for an alleged slip and fall that occurred on April 17, 2000.  Dr. Penner ordered an x-ray, prescribed Motrin and informed Morris that he would be referred to the California Medical Facility if physical therapy were needed.  On January 23, 2001, Morris filed a complaint against the medical staff alleging that he was not receiving adequate treatment for his injuries and the pain he was suffering.  At the "informal" level, his complaint was denied and Morris initiated a further review.[3]  Defendant Dr. Claude Mitchell (on behalf of defendant Dr. Douglas C. Peterson) reviewed the matter and on February 21, 2001, Dr. Peterson issued the Second Level Reviewer's Response:[4]

> You contend that on 04-17-00 you slipped on water on the second tier of your cell block and injured your back and neck.  You asked for medical treatment and "back therapy classes."  You wanted this done immediately.  On 05-08-00, Dr. Penner responded to your appeal.  He ordered an x-ray, prescribed Motrin, and ionformed you that you would be referred to CMF if physical therapy was needed.  You responded on 01-21-01 that you were dissatisfied, saying, "I still have not received any medical attention."

> On 02-15-01- Dr. Mitchell reviewed your medical record regarding the appeal issues.  The same day, Dr. Mitchell ordered that you have an orthopedic telemedicine consultation, at which time a determination will be made concerning your medical condition.  An appropriate treatment decision will also be made at that time (i.e., medication, physical therapy, or other treatment methods, if needed).

---

[2] Morris also alleged state tort claims, which were dismissed (docket 41), leaving only the "deliberate indifference" claim under § 1983.

[3] Docket 80, Plaintiff's Opposition to Defendant's [*sic*] Motion for Summary Judgment with Declaration and Memorandum of Points and Authorities (hereinafter "Plaintiff's Opposition"), Exhibit B.

[4] Plaintiff's Opposition, Exhibit A.  (References to and quotations from the California Department of Corrections Regulations are omitted.  The court has excerpted the material from the appeal decisions relevant to the issue of the medical care provided and the decision rendered by the appeal deciding officer.)

On September 10, 2001, the Director's Level Appeal Decision (signed on behalf of defendant Linda L. Rianda, Chief, Inmate Appeals Branch) was issued, which exhausted Morris' administrative remedies within the California Department of Corrections:[5]

> On February 15, 2001, Dr. Mitchell ordered an orthopedic telemedicine consultation, which will determine the appellant's need for medication, physical therapy or other treatment methods. The appeal was granted in part at the Second Level of Review.
>
> All submitted documentation and supporting arguments of the parties have been considered. The documentation and arguments presented are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the Second Level response.
>
> The appellant was personally interviewed on July 26, 2001, at SAC for the Third Level Review. The appellant continues to claim that he has not received medical treatment for his back and neck injury. However, the appellant acknowledged that he was provided with a back brace and use of a cane.
>
> On July 26, 2001, a case conference was held with Dr. Claude Mitchell, Chief Physician and Surgeon at SAC. Dr. Mitchell reviewed the appellant's medical file along with the February 21, 2001, response by the institution. Dr. Mitchell states that on April 23, 2001, Dr. Vong examined the appellant and ordered Motrin for the appellant and scheduled him to be seen in 14 days. Dr. Mitchell also states that on May 11, 2001, Dr. Vong examined the appellant and ordered a back brace and x-rays of the appellant's lower spine. Dr. Mitchell points out that on May 14, 2001, the appellant received x-rays of his lumbosacral spine and the x-ray results revealed the presence of some mild degenerative change seen at the lumbosacral junction. However, there were no significant discogenic osseous change and the "SI" joints appeared normal. Dr. Mitchell maintains that presently physical therapy for the appellant is not medically indicated. In this case, it appears that the clinicians at SAC are attentive to the appellant's medical needs; therefore, intervention at the Director's Level of Review is not necessary.
>
> CCR Section 3354 establishes that only qualified medical personnel shall be permitted to diagnose illness and prescribe medical treatment for inmates. It is not appropriate for the appellant to self-diagnose his medical problems and then expect a physician to implement the appellant's recommendation for a course of medical treatment. In this particular matter, the appellant's contention that he has not received adequate medical care is refuted by the medical records and professional staff familiar with the appellant's medical history.

---

[5] *Id.*; Docket 76, Declaration of Linda Rianda in Support of Motion for Summary Judgment or, In the Alternative, for Summary Adjudication of Issues, Exhibit A.

ORDER [Re: Motions at Dockets 61,67, 70, 74]
*Morris v. Mitchell*, Case No. 2:02-cv-02489-JKS                    3

In 2002, Morris initiated a second round of appeals contesting the adequacy of the medical care he was receiving.  On June 6, 2002, defendant Dr. M. Penner issued his First Level Appeal Response partially granting it:[6]

> PROBLEM DESCRIPTION/ACTION REQUESTED:  You complain of lower back pain and request to be seen by an orthopedic doctor.

> APPEAL RESPONSE:  You complain of having chronic back pain for years.  On 8-2-01 you had an MRI at CMF, which showed a very small and left paracentral disk protrusion at L5-S1.  Several orthopedic consultations were ordered (02-15-01,12-10-01, and 04-10-02).  However, it does not appear that you have actually seen an orthopedist yet.

> The consult desk was notified of your need for an orthopedic consultation as previously ordered.  It was verified that the requested consultation is pending.

On August 12, 2002, defendant Dr. Douglas C. Peterson issued his Second Level Appeal Response:[7]

> At the Second Level of Review you request to be seen by the orthopedist.

> You were seen by Dr. Ghalomi, a pain management specialist, at Doctor's Hospital of Manteca on July 29, 2002.  Dr. Ghalomi recommended that you have an epidural steroid injetion, receive physical therapy, repeat a Magnetic Resonance Imaging (MRI) scan, and be prescribed a non-steroid anti-inflammatory drug.  You were seen by Dr. J. Turella in the C Facility Clinic on August 5, 2002.  Dr. Turella prescribed Indocin for you, reviewed the results of the MRI, requested that you be scheduled for the steroid injection and a follow-ip MRI.  Further treatment will be based on the results of the MRI and one of our physician's professional opinion.

On October 22, 2002, the Director's Level Appeal Decision (signed for defendant Rick Manuel, Chief (A), Inmate Appeals Branch) was issued, which exhausted Morris' administrative remedies within the California Department of Corrections:[8]

> I.  APPELLANT'S ARGUMENT:  It is the appellant's position that he received an magnetic resonance imaging (MRI) to evaluate the cause of his lower back pain. He contends that he was informed he would be referred to an orthopedic specialist for a consultation.  He states that he has not yet been examined by an orthopedic

---

[6] Plaintiff's Opposition,  Exhibit C.

[7] *Id.*

[8] *Id.*

specialist and would like to know why not.  At the Director's Level of Review he has changed his issues and complains that he has not been sent back to Doctor's Hospital to again see a pain management specialist, receive an epidural steroid injection, receive physical therapy, and another MRI.

He requests that he be seen by an orthopedic specialist immediately.

II.  SECOND LEVEL'S ARGUMENT.  It is Staff's position that on July 29, 2002, the appellant was seen at Doctor's Hospital by Dr. Ghalomi, a pain specialist, who recommended the appellant be given an epidural steroid injection, receive physical therapy, repeat a MRI and be prescribed a non-steroid anti-inflammatory drugs.  On August 5, 2002, he was seen by Dr. Turella, who prescribed Indocin and reviewed the MRI results.  He was scheduled for the steroid injection and  a follow-up MRI.  Further treatment would be based on the results of the MRI and on the institution's physician's professional opinions.  The appeal was granted in part by the Second Level of Review.

III.  DIRECTOR'S LEVEL DECISION:  Appeal is denied.

A.  FINDINGS:  The appellant requested to be seen by an orthopedic specialist for his medical condition.  The institution referred appellant to a pain specialist at Doctor's Hospital and the recommendations made by the pain specialists were being done by the institution health care staff.  He was scheduled for an epidural steroid injection, a follow-up MRI and was prescribed medication.  He was informed that further treatment would be based on the MRI results and the professional opinion of a physician.  The appellant's original requested [*sic*] was responded too [*sic*] in part by the institution.  The appellant is advised that it is not appropriate for an inmate to medically make a self-diagnosis of his condition and then expect a licensed medical practitioner to prescribe the inmate's plan of treatment.

The appellant has added new matter to the appeal when presenting it for a Director's Level Review.  This must be submitted to the institution for review on a separate appeal in order to allow institutional staff the opportunity to respond and, possibly, provide the appellant with a satisfactory response.

Morris filed his complaint initiating this action on November 18, 2002.

### III.  ISSUES PRESENTED

Plaintiff's "Dispositive Motion" at docket 61 presents a single issue: Did the conduct of the defendants in rendering medical care act with deliberate indifference to his medical needs in violation of the Eighth Amendment to the U.S. Constitution.  The motions of defendants Penner and Manuel at dockets 67 and 70, respectively, raise the same issue as to them.

The motion of defendant Riandi at docket 74 raises the additional issue that she did not personally review the record or render the decision on the appeal

## IV.  STANDARD OF REVIEW

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the moving party is entitled to judgment in its favor as a matter of law.[9]  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment."[10]  In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.[11]  The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a fact-finder to resolve the parties' differing versions of the truth at trial.  There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[12]

## V.  DISCUSSION

The Supreme Court holding that the infliction of unnecessary suffering on prisoners violated the Eighth Amendment stated in *Estelle v. Gamble*:[13]

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment

---

[9] FED. R. CIV. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

[10] *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986).

[11] FED. R. CIV. P. 56(e); *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002).

[12] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[13] 429 U.S. 97, 104–105 (1976) (footnotes, internal quotation marks and citations omitted).

once prescribed.  Regardless of how evidenced, deliberate indifference to a
prisoner's serious illness or injury states a cause of action under § 1983.

In *Estelle* the Supreme Court distinguished "deliberate indifference to serious medical needs of
prisoners," from "negligen[ce] in diagnosing or treating a medical condition," holding that only
the former violates the Constitution.[14]  In short, Eighth Amendment liability requires "more than
ordinary lack of due care for the prisoner's interests or safety."[15]

In determining deliberate indifference, the court scrutinizes the particular facts and looks
for substantial indifference in the individual case, indicating more than mere negligence or
isolated occurrences of neglect.[16]  The Ninth Circuit recently spoke to the subject of the
appropriate test under *Estelle*.[17]

In the Ninth Circuit, the test for deliberate indifference consists of two parts.
First, the plaintiff must show a serious medical need by demonstrating that failure
to treat a prisoner's condition could result in further significant injury or the
unnecessary and wanton infliction of pain. Second, the plaintiff must show the
defendant's response to the need was deliberately indifferent.  This second
prong—defendant's response to the need was deliberately indifferent—is satisfied
by showing (a) a purposeful act or failure to respond to a prisoner's pain or
possible medical need and (b) harm caused by the indifference.  Indifference may
appear when prison officials deny, delay or intentionally interfere with medical
treatment, or it may be shown by the way in which prison physicians provide
medical care. Yet, an inadvertent [or negligent] failure to provide adequate
medical care alone does not state a claim under § 1983.  A prisoner need not show
his harm was substantial; however, such would provide additional support for the
inmate's claim that the defendant was deliberately indifferent to his needs.  If the
harm is an isolated exception to the defendant's overall treatment of the prisoner
[it] ordinarily militates against a finding of deliberate indifference.

First, the undisputed evidence establishes that Morris does, indeed, suffer from a serious
medical condition, *i.e.*, that his condition adversely affects his daily activities (ability to sleep)

---

[14] *Id.*, at 106.

[15] *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

[16] *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.1990).

[17] *Jett v. Penner*, 429 F.3d 1091, 1096 (9th Cir.2006) (internal quotation marks and citations
omitted).

and causes him pain.[18]  That brings us to the question of whether the defendants were deliberately indifferent to Morris' medical needs.  A defendant must purposely ignore or fail to respond to a prisoner's pain or medical need in order for deliberate indifference to be established.  Where the claim is based upon delay in providing a specified treatment, a prisoner has no claim for deliberate medical indifference unless the delay was harmful.[19]  On the record in this case, the court can not make such a finding as to defendants Penner, Manuel, and Riandi.

Morris' strongest claim is that he had not received certain medical treatment that was recommended by a consulting physician—an epidural steroid injection, physical therapy, and a follow-up MRI.[20]  However, the evidence does not show that defendants Penner, Manuel, or Riandi, or any of them, were responsible for either (1) providing the recommended treatment personally or (2) ensuring that the treatment was provided.  Moreover, Morris has not, at this point, submitted any competent medical evidence that the failure to provide the recommended treatment either (1) resulted in further serious injury or deterioration of his condition or (2) would significantly reduce the level of pain below that which is available by the prescribed pain medications.  Indeed, at this point, there is no evidence that the course of treatment Morris received fell below the standard of care required to establish mere negligence, *i.e.*, a medical malpractice claim.[21]

The undisputed evidence establishes that no reasonable trier of fact could find that defendants Penner, Manuel and Riandi acted with deliberate indifference in connection with providing medical care to Morris and they are, therefore, entitled to judgment as a matter of law.  On the other hand, the undisputed evidence is not sufficiently strong enough to preclude a reasonable trier of fact from finding that defendants did not act with deliberate indifference and, therefore, find in their favor.  Morris is not entitled to judgment as a matter of law.

---

[18] *See Lopez v. Smith*, 203 F.3d 1122, 1131–1132 (9th Cir.2000).

[19] *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir.1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir.1997) (en banc).

[20] Defendants do not dispute that Morris did not receive this recommended treatment, at least at the time the complaint was filed.

[21] *See Hutchison v. United States*, 838 F.2d 390, 394 (9th Cir.1988).

## VI.  CONCLUSION AND ORDER

Based upon the foregoing,

1.  the Dispositive Motion filed by plaintiff James Anthony Morris at docket 61 is DENIED; and

2.  the motions of defendants Dr. M. Penner, Rick Manuel, and Linda L. Rianda at dockets 67, 70, and 74, respectively, are GRANTED.

IT IS ORDERED THAT the complaint as to defendants Dr. M. Penner, Rick Manuel, and Linda L. Rianda be DISMISSED, with prejudice; plaintiff to take nothing by way thereof as to those defendants.

IT IS FURTHER ORDERED THAT there being no just reason for delay, the Clerk will enter a final judgment of dismissal as to defendants Dr. M. Penner, Rick Manuel, and Linda L. Rianda; each party to bear his or her own attorney's fees and costs.

Dated at Anchorage, Alaska this 26th day of April, 2006.

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge